NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.C.

No. 1 CA-JV 25-0191

FILED 05-14-2026

Appeal from the Superior Court in Maricopa County
No. JD45137, JS22562
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee A.C.*

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Andrew J. Becke joined.

**C A T T A N I**, Judge:

¶1        Arqusha C. ("Mother") appeals the superior court's order terminating her rights to her child A.C.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        A.C. was born in August 2024.[1]  In June 2025, an unknown woman dropped him off at the hospital with visible injuries, claiming that she found the child on a trail.  A.C. was diagnosed with severe injuries including a traumatic brain injury, skull fracture, injuries to his frenulum, brain bleeding that led to seizures, bruising on both eyelids, and abrasions on his ears and nose.  The injuries were described as "non-accidental" and required follow-up treatment.

¶3        Mother arrived at the hospital several hours later.  She claimed that A.C. had fallen off a bed earlier that day and that she was with a friend when she noticed swelling on A.C.'s head.  Mother said that she did not want to be the person to take A.C. to the hospital because she was embarrassed and did not want the child to be taken away from her.

¶4        Mother likewise told police that A.C. fell off the bed, but she later asserted that he had fallen and hit his head on the carpeted floor while she was attempting to place him in his baby carrier.  She denied harming A.C. and noted that he had several accidental falls in the prior months.  Mother claimed that she noticed A.C.'s head swelling while they were riding the bus to the mall, and she arranged for an unidentified adult to drop A.C. off at the hospital.

¶5        Mother had four other children.  Her oldest child is deceased, and the other children have lived with out-of-state relatives.  One of

---

[1]        Mother has not identified A.C.'s father, and he is not a party to this appeal.

Mother's other children was removed from her care due to a brain bleed and a burn, which Mother asserted was caused by a bug bite.

**¶6** The Department of Child Safety ("DCS") took temporary custody of A.C. while he was in the hospital, then placed him with a licensed foster family. In July 2025, DCS petitioned to terminate the relationship between Mother and A.C. on the grounds that Mother neglected or abused A.C.[2] *See* A.R.S. § 8-533(B)(2).

**¶7** The court held a contested dependency and severance adjudication in October 2025. Finding that Mother had abused and neglected A.C., the court terminated the parent–child relationship. *See* A.R.S. §§ 8-201(2)(a), (25)(a), -533(B)(2).

**¶8** Mother timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

**¶9** The superior court may terminate a parent–child relationship if clear and convincing evidence establishes at least one statutory ground for termination and a preponderance of the evidence shows termination to be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). We defer to the superior court's factual findings if supported by reasonable evidence and accept the court's legal conclusions unless clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30–31 (2023).

**¶10** DCS sought termination under A.R.S. § 8-533(B)(2), alleging that Mother neglected or willfully abused the child. Abuse is defined as "the infliction or allowing of physical injury, impairment of bodily function or disfigurement or the infliction of or allowing another person to cause serious emotional damage." A.R.S. § 8-201(2)(a).

**¶11** Mother does not dispute that there is sufficient evidence to support the court's finding of abuse or neglect. Mother argues only that the record does not support the court's finding that termination was in A.C.'s best interests. Termination is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018).

---

[2] DCS petitioned for dependency and termination concurrently, and the court also found A.C. dependent.

¶12        Mother argues that the court did not consider the totality of circumstances, claiming that she had stable housing and employment throughout this case. But the court considered that evidence, specifically finding that Mother had stable employment and housing and had been compliant with the services offered to her. Nevertheless, other evidence supported the finding that termination was in A.C.'s best interests. The child suffered extensive traumatic injuries, and Mother failed to plausibly explain those injuries. An unidentified adult took A.C. to the hospital and left without signing medical consent forms or providing the hospital with information about the child's injuries, and Mother initially lied about this individual's identity.

¶13        Medical testimony at trial revealed that A.C.'s injuries were not consistent with Mother's explanations and instead appeared to have resulted from abuse. The evidence showed that A.C. was a vulnerable child due to his age. Witnesses opined that A.C. would be in imminent danger if he were returned to Mother's care because of his vulnerability, the severity of his injuries, and Mother's limited caregiver protective capacities. The evidence showed that A.C. was adoptable, his placement was willing to adopt him, and his placement could meet his physical, social, educational, medical, psychological, and emotional needs.

¶14        The evidence supports the superior court's finding that termination is in A.C.'s best interests. Accordingly, the court did not err by terminating Mother's parental rights.

## CONCLUSION

¶15        We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:      JR

4